**1402**

59 CCPA
**Application of Donald Lee BREBNER.**

**Patent Appeal No. 8627.**

United States Court of Customs
and Patent Appeals.

March 23, 1972.

Earl L. Handley, Wilmington, Del., attorney of record, for appellant. G. A. Hapka, Arlington, Va., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 1 and 3–5 of appellant's application entitled "Polyethylene Blends." [1] No claims were allowed.

The invention relates to a two-component blend consisting of a polyethylene homopolymer and an ethylene-methacrylic acid copolymer. Appellant has found that the blends of the present invention produce films that retain the tear strength (toughness) of the copolymer while having a yield strength approaching that of the polyethylene homopolymer. At the time the invention was made it appears from the record that attempts to modify polyethylene to im-

---

1. Serial No. 393,928 filed September 2, 1964.

prove its toughness caused a reduction in yield strength and vice versa. The advantage that appellant's blend has over the prior art is apparent.

Claim 1 is representative:

1. A blend comprising uniformly random ethylene-methacrylic acid copolymer and the acid constitutes from 1 to 5 mole per cent of the copolymer, said copolymer having a melt index of 0.5 to 50 dg/min., and 10 to 50 per cent, based on the weight of blend composition, of polyethylene having a density of 0.910 to 0.970 g/cc and melt index of 0.1 to 20 dg/min.

Dependent claims 3, 4, and 5 recite, respectively, a density range of 0.945 to 0.970 g/cc. for the polyethylene, that the blend is in film form, and a polyethylene concentration range of 20 to 40 percent.

The examiner rejected all of the claims under 35 U.S.C. § 112, first paragraph, as being based on an insufficient disclosure in that the specification does not disclose any method for making the ethylene-methacrylic acid copolymer. In response to this rejection, appellant cited a Canadian patent to Armitage,[2] which allegedly teaches a method of preparing uniformly random copolymers of ethylene and methacrylic acid of the type disclosed in appellant's specification, as evidence that such copolymers were well known in the art at the time of filing his specification. The examiner, however, maintained his rejection, reasoning that in order for the specification to be enabling the structure of the copolymers should be set forth because the specific copolymers used by appellant are critical in the blend. In particular, it was his position that "Since the blend contains up to 50% copolymer[3] which in turn is 99–95% ethylene it follows that the blend properties ought to be equally depend on the structure (amount of branching) of the ethylene component of the copolymer."

We cannot agree with this basis of the rejection. While it is not disputed that the level of toughness can change with the copolymer structure, there is nothing to indicate that blends with the desired properties are not achieved with all disclosed copolymers. It is apparent from appellant's disclosure that the copolymer sets the base level of toughness for the blend which, while not improved by the addition of polyethylene, remains essentially constant while the yield strength is increased. The examiner has not even asserted that the addition of homopolymers of polyethylene to even a highly branched copolymer would not result in an increase in yield strength without sacrificing toughness. The Patent Office has not presented us with sufficient reason to doubt that any of the disclosed copolymers, whether branched or not, will result in blends having the properties set forth, and therefore has not fulfilled its burden in this regard. In re Marzocchi, 439 F.2d 220, 58 CCPA 1069 (1971).

The board, in affirming the examiner, placed its emphasis on a slightly different basis for rejecting the claims under the first paragraph of § 112. Like the examiner, the board found the failure to disclose any method of making the copolymer a fatal flaw in appellant's specification. The board, however, expanded on the examiner's complaint that appellant had not set forth any mode for making the copolymer when it stated:

\* \* \* the specification does not disclose the specific production of any particular material used in the blend. Section 112 requires not only that the specification describe the invention, but also that the best mode, taken as requiring at least one mode, of carrying out the invention be set forth. No particular mode of carrying out the invention is set forth.

---

2. No. 655,298 issued January 1, 1963.

3. The examiner here has apparently misconstrued the claim. The blend could contain up to 90% of the copolymer. The up to 50% limitation relates to the homopolymer of polyethylene.

On reconsideration, the board explained that:

> * * * we were not concerned with the "best" in the "best mode" expression * * *. The Office does not inquire whether any mode adequately disclosed is or is not in fact the best.

Appellant responds by pointing out that his invention does not lie in the copolymer or its preparation, this being old in the art as evidenced by the Canadian patent. It is appellant's position that the invention lies in the blend of polyethylene (known in the art) and ethylene-methacrylic acid copolymer (also known in the art), that the specification clearly enables one to make and use such a blend, and that as such the specification sets forth the best mode of carrying out that invention.

Whatever the best mode requirement may be said to be,[4] we think that it has been met here. The claimed invention is a blend of uniformly random ethylene-methacrylic acid copolymer and polyethylene which can be used to prepare films of high quality. Table I in appellant's specification lists thirteen films and their properties. Five of these films are made of blends encompassed by the claims on appeal. In regard to those five blends, Table I indicates the percentage of polyethylene and copolymer in the blend; the melt index of each of these components; the density of the polyethylene component; and the melt index, tear strength, and yield strength of the blend. Appellant has also set forth a detailed procedure for the preparation of the blends of Table I. Thus, several embodiments of the invention have been given, and we think such a disclosure sufficient to meet any "best mode" requirement which may be said to exist here. In re Bosy, 360 F.2d 972, 53 CCPA 1231 (1966).

The board, however, felt that a best mode was not presented in Table I since there is no disclosure in the specification or the Canadian patent "such as to enable any copolymer with the characteristics mentioned in the table to be produced." Here the board apparently either confused or combined the enablement requirement with the best mode requirement. This court has on several occasions emphasized that these two requirements are two distinct inquiries. See, e. g., In re Karnofsky, 390 F.2d 994, 55 CCPA 940 (1968); In re Gay, supra. Appropriate inquiries into the best mode requirement should pertain to the contemplated mode of carrying out the invention, which in this case is the blend and not the starting materials.

A method of making starting materials not known in the art must be set forth in order to comply with the enablement requirement. In re Collier, 427 F.2d 831, 57 CCPA 1171 (1970). But a rejection for failure to enable because of failure to disclose how to obtain starting materials would be sustainable only if the method of obtaining them would not be apparent to one of ordinary skill in the art. In re Barrett, 440 F.2d 1391, 58 CCPA 1155 (1971); In re Naquin, 398 F.2d 863, 55 CCPA 1428 (1968).

This brings us to the question of whether the method of preparing the disclosed copolymers was known in the art in order that appellant's disclosure be considered enabling. See Martin v. Johnson, 454 F.2d 746, 59 CCPA —— (1972), and the cases cited therein. As we said earlier, the Canadian patent was cited as evidence that such copolymers were known in the art, and the board did not question appellant's right to rely on the Canadian patent in that regard. The board did find, however, that appel-

---

4. Compare the suggestion in In re Boon, 439 F.2d 724, 58 CCPA 1035 (1971), that the best mode requirement might necessitate the inclusion of a greater degree of specificity than that necessary to comply with the enablement requirement of § 112, with the statement in In re Gay, 309 F.2d 769, 50 CCPA 725 (1962), that the sole purpose of the best mode requirement is to restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of their inventions which they have in fact conceived.

lant employs as a preferred embodiment a copolymer having a melt index of 2.5 dg./min.[5] and that neither the specification nor the Canadian patent describes a specific procedure for making a copolymer of this particular melt index.[6]

The board has advanced no factual basis on which we can conclude that one skilled in the art, possessed with knowledge represented by the Canadian patent, would not be able, without undue experimentation, to prepare copolymers having a melt index of 2.5 dg./min. The Canadian patent discloses how to make the broad class of copolymers used in the blends and it is disclosed therein that the copolymers prepared have a melt index in the range of 0.01 to 30 dg./min. We have no reason to doubt this disclosure or to conclude that one of ordinary skill in the art would not know how to prepare a copolymer having any given melt index within the range mentioned in the Canadian patent. Rather than suggesting a factual basis that would allow this court to conclude that it would be beyond the level of ordinary skill in the art to prepare copolymers in the melt index range claimed, the board and the solicitor have merely concluded this to be true. Mere conclusionary statements as to the level of ordinary skill in the art are not sufficient basis for a rejection under 35 U.S.C. § 112. In re Karnofsky, supra.

The decision of the board is reversed.

Reversed.

5. Melt index can be expressed in dg./min. (decigrams per minute) or g./10 min. (grams per 10 minutes).

6. In addition, the solicitor notes that, on its face, the Canadian patent indicates that copolymers having a melt index in the range of 0.01 to 30 dg./min. can be prepared, while the instant claims call for a melt index in the range of 0.5 to 50 dg./min. The solicitor then argues that there is no teaching anywhere of how to prepare copolymers with a melt index in the range of 30 to 50 dg./min. and, thus, the specification is also not enabling for this reason. We do not think it appropriate to discuss this line of reasoning since it was first presented by the solicitor, appellant did not have a sufficient opportunity before the Patent Office to respond to it, and it does not appear that either the examiner or the board relied on it or even considered it.