Application of Lawrence Anthony
CESCON.
Patent Appeal No. 8884.

United States Court of Customs
and Patent Appeals.
March 22, 1973.

William R. Moser, James T. Corle, Wilmington, Del., attorneys of record, for appellants; Gerald A. Hapka, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

MARKEY, Chief Judge.

This appeal is from the decision of the Board of Appeals sustaining rejections of claims 1, 2, 4, 5 and 11 under 35 U.S.C. § 103 and claims 1, 41–44 and 51 under 35 U.S.C. § 112 of appellant's application serial No. 622,085, filed March 10, 1967, for "Phototropic 2, 4, 5–Triphenylimidazolyl Radicals and Dimers Thereof." [1] We reverse.

*The Invention*

The invention relates to novel photo-dissociable, substantially colorless imidazolyl dimers and colored radicals formed therefrom under light stimulation. Claim 1 is illustrative:

1. A composition of matter selected from the class consisting of

A. A light-stable imidazolyl maintained under the influence of ultraviolet light represented by the formula

wherein $R^1$ has a sigma value below 0.7 and is selected from lower alkyl, lower alkoxy, lower alkoxycarbonyl, lower alkylthio, di(lower alkyl)-carbamoyl, di-(lower alkyl)sulfamoyl, lower alkanoyloxy, N-lower alkyl-lower alkanamido, phenyl, naphthyl, phenyloxy, naphthyloxy, phenylthio, naphthylthio, halo or cyano;

$R^2$ through $R^{10}$ are each individually selected from hydrogen, lower alkyl, lower alkoxy, lower alkoxycarbonyl, lower alkylthio, di(lower alkyl) carbamoyl, di(lower alkyl)sulfamoyl, lower alkanoyloxy, N-lower alkyl-lower alkanamido, phenyl, naphthyl, phenyloxy, naphthyloxy, phenylthio, naphthylthio, halo or cyano;

and any two $R^1$ through $R^{10}$ substituents in adjacent positions on the same phenyl ring of the above formula can be joined together to form a $-CH=CH-$ group; and

with the proviso that only one of $R^5$ through $R^7$ and only one of $R^8$ through $R^{10}$ can be in a position ortho to the phenyl carbon that is attached to the imidazolyl nucleus of the above formula;

said imidazolyl having an unpaired delocalized electron and having four electrons paired; and

said imidazolyl being maintained upon the surface of an inert substrate or in solution in a solvent that is inert to said imidazolyl; and

B. dimers thereof, said dimers having the property of forming color in solution in an inert solvent upon exposure to ultraviolet radiation corresponding to the ultraviolet light absorption spectrum of the dimer, which color fades upon removal of the radiation.

Claims 2, 4, 5 and 11 are restricted to compositions consisting essentially of the imidazolyl form and substrate or solvent (A in claim 1), varying in scope as to substitutents $R^1$ through $R^{10}$. Claims 41–44 are drawn to the dimer form, without specification as to linkage, varying in scope as to R substituents. In claim 51 the general imidazolyl radical formula of claim 1 is set forth as being in reversible equilibrium with the dimer in an inert solvent.

The phototropic nature of the compositions, i. e. their change in color upon exposure to light and reversal upon removal of the stimulus, renders them use-

1. This application is a continuation-in-part of serial No. 388,010, filed August 6, 1964, which was a continuation-in-part of serial No. 181,475, filed March 21, 1962.

ful as automatic sun shades. The phenomenon of phototropism itself is not unexpected. Appellant's contribution lies instead in the discovery that the presence of an ortho substituent in the 2–phenyl ring imparts an improved responsiveness to changes in light intensity. Greatly increased color fading rates are obtained. Furthermore, such a substituent raises the temperature required to dissociate the dimer, reducing unwanted color due to thermal dissociation in the dark. Other distinguishing properties are increased stability and a higher number of color reversals before composition failure.

### The 103 Rejection

The references relied upon by the examiner and the board were:

| | | |
|---|---|---|
| Green | U.S. 3,205,083 | Sept. 7, 1965 |
| Neugebauer et al. | German Patent 1,106,599 | May 10, 1961 |
| Deliwala et al. | Chem. Abstracts, volume 45, cols. 6177–78 (1951) | |
| Radziszewski | Chem. Abstracts, volume 4, pages 2265–66 (1910) | |
| Hayashi et al. | Bull. Chem. Soc. (Japan) volume 33, pages 564–66 (1960) | |
| Zimmerman et al. | Angew. Chem., volume 73, page 808 (1961) | |
| Gould | Mechanism and Structure in Organic Chemistry, pages 672–82, New York, Holt (1959). | |

Green, Neugebauer, Deliwala and Radziszewski (the primary references) disclose several substituted 2, 4, 5–triphenylimidazoles wherein there is an ortho substituent of the type encompassed by $R^1$ of the claims in the 2–phenyl ring. Hayashi and Zimmerman teach two different methods for obtaining the free radical form from unsubstituted 2, 4, 5– triphenylimidazole or triphenylimidazoles having para-methyl or methoxy substituents on the 2–phenyl ring. Gould merely provides background information on free radicals, having no specific disclosure directed to imidazoles.

Claims 1, 2, 4, 5 and 11 were rejected under 35 U.S.C. § 103 as unpatentable over the cited references. It was the examiner's position that the claimed imidazolyl radicals were obvious in view of the precursor imidazoles disclosed by the primary references considering the known methods of Hayashi and Zimmerman for preparing related imidazolyl free radicals from such an imidazole form. Since the prior art imidazoles relied upon had ortho substitution in the 2–phenyl ring, the examiner considered any differences of the claimed imidazolyl radicals resulting from such substitution to be irrelevant to the issue involved herein.

In sustaining the rejection, the board added that in view of the known methods of preparation and the availability of the precursors of appellant's claimed compounds, "unobviousness cannot be predicated merely on an emphasis on compounds with a particular locus of substitution." While the showings of improved properties alleged to be dependent on ortho substitution were not totally disregarded, as was the case with the examiner, the board found the same to be inadequate, holding:

\* \* \* Appellant's argument or implication that the claimed free radicals necessarily must have "beneficial" properties not possessed by isomeric free radicals, having for instance, para instead of ortho substituents on the 2–phenyl group, is neither adequately supported nor implicit as to particular beneficial properties universally present in various solutions of all the claimed compounds. The specification (pages 40 and 41) gives no convincing and unequivocal assurance that the relative values given for color fading in a benzene solution have a general significance as to solvents in general and inert substrates such as adsorbent particles.

Appellant now comes before us, urging that the issue lies in whether it was obvious *to make* imidazolyl radicals and dimers bearing an ortho substituent on the 2–phenyl ring, not in whether it was obvious *how to make* them once their desirability was ascertained. Failure to give any, or at least proper, weight to the evidence of unexpected differences between the claimed subject matter and

the prior art is said to be clearly contrary to prior decisions of this court.

■ We agree. It has long been our position that a compound and its properties are inseparable and that no property can be ignored in determining patentability over the prior art. In re Papesch, 315 F.2d 381, 391, 50 CCPA 1084, 1097 (1963); In re Wagner, 371 F.2d 877, 881, 54 CCPA 1031, 1037 (1967). The pertinence of *unexpected* properties to the issue of obviousness to make, as distinguished from how to make, is set forth in the main opinion in In re Larsen, 292 F.2d 531, 533, 49 CCPA 711, 713 (1961):

> * * * Since there was nothing to indicate that the compounds, when made, would have these properties, it was not obvious to make the compounds. In such a case the allowance of claims to the compounds must depend on the proposition that it was unobvious to conceive the idea of producing them, within the meaning of Title 35 U.S.C., § 103.

Here the inventive concept lies in the selection of a particular group of substituted triphenylimidazoles for preparation of the corresponding dimers which in turn result in the claimed free radicals in the presence of ultraviolet light. Nothing in the prior art suggests any relationship between ortho substitution in the 2–phenyl ring and the properties disclosed and illustrated in appellant's specification. We cannot accept even the premise of the solicitor's contention that inasmuch as the most relevant prior art disclosed similar preparation from imidazoles having no or para substitution in the 2–phenyl ring, selection was limited to the four possibilities of mono-substitution on the 2–phenyl ring so that "to find that ortho substitution is more effective or superior does not amount to a patentable contribution." The references relied upon, namely Hayashi et al. and Zimmerman et al., simply demonstrate the phototropic nature of the systems formed. No suggestion is given that a particular substitution on any one of the three phenyl rings would result in the improved light responsiveness and other characteristics achieved by appellant. The fact that ortho-substituted triphenylimidazoles, along with many other substituted triphenylimidazoles, were available for possible conversion adds no direction to the selection.

The only remaining question lies in the sufficiency of the evidence presented in appellant's specification to support the alleged interrelationship of ortho substitution and improved properties. The board having considered this evidence, we see no need for remand for the examiner's review of the same.

■ Our disagreement with the action of the Patent Office at this level arises from the overly stringent standards set up for evaluating appellant's objective evidence. It is true that the claims are broadly drawn to the presence of the imidazolyls in the environment of an inert solvent or substrate. The examples providing comparisons with analogously substituted isomers or unsubstituted imidazoles, on the other hand, are limited to the use of a benzene solution. Not all compounds encompassed by the claims are tested. But ample data has been provided to establish the correlation between ortho substitution on the 2–phenyl ring and greatly increased color fading rates. Moreover, no factual basis appears in the record for expecting the compounds to behave differently in other environments. Accordingly, we reverse the 103 rejection.

### The 112 Rejection

Claims 1, 41–44 and 51 were rejected under 35 U.S.C. § 112, paragraph one, as being based on a specification which does not sufficiently disclose the preparation of dimers having four of the six linkages encompassed by the claims. The examiner's view was that inasmuch as "each linkage in the dimer is being claimed" and statements in the specification make it clear that different conditions resulted in different linkages, disclosure of the *exact* conditions for each

isomer is essential. Production of a particular linkage was deemed "an important part of the invention even though the manner in which the imidazoles are linked together in the dimer does not appear to be of importance with regard to the formation and properties of the free radicals." The board concurred, adding that:

> * * * Appellant, in fact, asks persons who may want to utilize various distinct isomers covered by the claims and undoubtedly differing in their properties * * * to carry out experiments to discover the reaction conditions and product properties *for isomers* which appellant could not, or did not describe.

As set forth in In re Moore 58 CCPA 1042, 1047, 439 F.2d 1232, 1236, 169 USPQ 236, 239 (1971), the relevant inquiry under the "how to make" requirement of paragraph one of 35 U.S.C. § 112 is whether the scope of enablement provided to one of ordinary skill in the art by the disclosure is commensurate in scope with the protection sought by the claims. The claimed subject matter here involved consists of certain substituted imidazole dimers "having the property of forming color in solution in an inert solvent upon exposure to ultraviolet radiation corresponding to the ultraviolet light absorption spectrum of the dimer, which color fades upon removal of the radiation." Particular linkage or linkages are unspecified. As illustrated in claim 51, the free radical formed on dissociation is identical, regardless of the isomeric form of dimer. The dimer or dimers obtained on recombination may vary from the original isomers, dependent upon temperature, according to the specification. Hence we find disclosure of general procedures for preparation of the initial dimers without delineating exact conditions for each isomer of each imidazole in every environment adequate to practice the claimed invention. Isolation of individual isomers is neither necessary nor within the ambit of these claims.

The decision of the board is reversed.

Reversed.