**Application of John T. MAYHEW.**
**Patent Appeal No. 8954.**

United States Court of Customs
and Patent Appeals.
Aug. 9, 1973.

James J. Shanley, Washington, D. C., attorney of record, for appellant. Raymond N. Baker, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal from the decision of the Patent Office Board of Appeals sustaining the examiner's rejection under 35 U.S.C. § 112 of claims 12 and 16–20

of appellant's application [1] entitled "Hot-Dip Metal Coating Method and Apparatus." In his brief before this court, appellant has requested that the appeal be withdrawn with respect to claims 12 and 16. Accordingly, the appeal is dismissed as to those claims. We reverse as to claims 17–20.

*Invention*

Appellant regards his invention to be an improvement for "continuous-strip molten metal coating operations." The coating operation referred to is the process of galvanizing metal, usually but not necessarily steel. Basically this process involves advancing a preheated continuous strip of metal through a bath of molten metal. Zinc comprises greater than 98 percent of the bath and the molten metal is referred to in the art as "galvanizing spelter."

The strip to be coated is preheated for annealing and cleaning purposes and these require that the strip be heated to a temperature that exceeds the melting point of the spelter. Because of this pretreatment, the advancing metal strip provides all the heat that is required to maintain the spelter in a molten state.

As the rate at which the strip is advanced into the bath increases, the temperature of the spelter increases and it may become overheated. According to the specification, this affects the efficiency of the galvanizing process since the usual measures taken to remedy this situation are to stop or slow the introduction of metal strip into the bath. This, of course, reduces the amount of strip that can be coated in a given time.

The specification enumerates several problems that are said to arise when the spelter becomes overheated. These include thinning of the spelter, draping of the coating applied, and uneven, nonuniform coating of the metal surface. Appellant proposes to solve these problems by immersing cooling means in the bath. Therefore, as measured by claims 17 and 20, the broadest claims on appeal, appellant regards his invention to be:

17. Continuous-strip hot-dip metal coating apparatus comprising

(a) hot-dip coating means including a coating bath containing molten coating metal, means for introducing steel strip into and means for delivering steel strip from the coating bath,

(b) means for heating the steel strip before the steel strip is introduced into the coating bath to a temperature above the melting temperature of coating metal,

*(c) coolant means immersed in the coating bath for establishing heat exchange between a fluid coolant and the molten coating metal,*

*(d) means for providing a continuously flowing fluid coolant to the coolant means,* and

(e) means for controlling coating weight on the steel strip on delivery of the coated steel strip from the coating bath. [Emphasis ours.]

20. Continuous-strip method for galvanizing steel strip comprising the steps of

(a) preheating steel strip to a temperature substantially above a desired molten galvanizing bath temperature,

(b) adding heat to the molten galvanizing bath by introducing the preheated strip into the molten galvanizing bath while the strip is at a temperature substantially higher than the desired temperature of the galvanizing bath,

*(c) subjecting a portion of the bath to a cooling action by heat exchange of the portion of the bath with a coolant in heat exchange means immersed in the portion of the bath* [Emphasis ours],

(d) *moving the strip through the molten galvanizing bath,*

(e) delivering the coated strip from the galvanizing bath, and

1. Serial No. 704,193 filed November 7, 1967.

(f) controlling the coating weight of molten galvanize coating on the strip upon delivery of the steel strip from the molten galvanizing bath.

Other than the underlined portions, the elements of these claims are those known to the prior art. Claims 18 and 19 depend from claim 17 and add limitations not pertinent to our decision.

### The Rejection

The rejection of these claims as variously expounded by the examiner and board grows out of the fact that appellant's specification sets forth but a single embodiment of the invention. This embodiment can best be seen by considering Fig. 2 of the specification set forth below:

## FIG. 2

[A7678]

In Fig. 2, preheated strip 34 is shown being introduced into bath 36. It passes around roll 40 and then travels upward through a zone of cooled spelter 44, defined by the broken lines. This zone is created by circulating a coolant through conduits 46, 48, 52 and 54 immersed in the bath. Rolls 41 and 42 are used to control the thickness of the coating applied to the metal.

No embodiments are specifically described in the specification wherein cooling means are located in any position but that adjacent to the point where the strip leaves the bath. Furthermore, the specification does not explicitly state that the cooling means can be located anywhere in the bath.

The examiner based his rejection under section 112 on the ground that the claims in question were "indefinite." The board agreed with the statutory basis for the rejection but not with the reasoning behind it, saying:

> We are unable to discover in the specification the manner in which appellant's apparatus and process can be operated when the controlled cooling is in any position other than adjacent the exit side of the bath. We agree fully with the Examiner's position except that we do not consider the claims to be indefinite but rather to fail to find adequate support in the specification (35 U.S.C. § 112, first paragraph).

> \*    \*    \*    \*    \*    \*

> In our opinion the Examiner's rejection is clearly sustainable since the specification does not point out how appellant's method and apparatus can be made operative by cooling at any position other than that described in the specification.

### Opinion

The precise manner in which the specification fails to support claims which would allow cooling to be done in a position other than the exit point is not altogether clear from the board's remarks. However, we think the board's opinion can be considered to raise the question of whether the specification satisfies the separate description and how to use requirements of section 112, first paragraph. In re Ahlbrecht, 435 F.2d 908, 58 CCPA 848 (1971).

The solicitor sets forth his position in the following terms:·

\* \* \* appellant's specification does not contain a *description* commensurate with the scope of the invention covered by claims 17–20 which would *enable* one skilled in the art to use that invention as broadly claimed. [Emphasis in original.]

In the specification, it is stated:

The present invention eliminates these problems by controlling the temperature of molten spelter which forms the final coating on the strip. A cooled spelter zone is located in the galvanizing bath so as to deliver strip which is coated with spelter at the desired temperature for effective coating control and to produce coating smoothness.

There is nothing in this statement that indicates that the cooling means had to be located adjacent the exit point for the strip. In fact, that appellant contemplated that the cooling means could be positioned elsewhere is evident from the following statement in the specification:

There are other circumstances in hot-dip coating where the temperature of the bath must be above optimum coating temperature for the particular coating metal. Applicant has discovered that *under such circumstances* a superior product can be produced by *preferentially* lowering the temperature of the bath in a zone contiguous with strip approaching exit from the bath. [Emphasis ours.]

In other words, the cooling means can be located adjacent the exit point when it is desired, for reasons not specified, to maintain the rest of the bath at a temperature above the optimum for coating purposes. Thus, the placement of the cooling means at this point is a matter of choice or convenience rather than a requirement inherent in the process.

■ We think these passages from the specification are sufficient to clearly convey to one skilled in the art the information that applicant has invented the subject matter claimed and this satisfies the description requirement of section 112. In re Ruschig, 379 F.2d 990, 54 CCPA 1551 (1967).

However, as the solicitor recognizes, even if the specification describes the invention as broadly as it is claimed, a rejection based on the first paragraph of section 112 might still lie since the specification must also present enough information "to enable any person skilled in the art \* \* \* to make and use \* \* \*" the invention as claimed. In re Moore, 439 F.2d 1232, 58 CCPA 1042; In re Ahlbrecht, supra.

Even though the specification does not actually describe an apparatus having cooling means located elsewhere than at the exit point, appellant argues that, given his disclosure, one skilled in the art would be able to locate the cooling means elsewhere in the bath than adjacent the exit point and achieve the desired result of reducing the temperature of the spelter at that point. For example, according to appellant the cooling means can be located at the *entry* point for the strip. This could be used to reduce the temperature of the strip so that it did not overheat the bath in the first place. Alternatively, he points out that cooling means located anywhere in the bath will affect the bath as a whole.

. The board was not persuaded since it felt that the claims did not preclude having as a part of the apparatus or using as a part of the process a source of heat in addition to the heated strip. Presumably it felt that supplemental heating might result in hot spelter at the exit point unless the cooling means were located there, at least this is a rationalization offered by the solicitor in support of the board's position.

■ Appellant argues that this is an illogical construction of the claims since one skilled in the art attempting to deal with the problem of overheated spelter

caused by the strip is not going to be adding heat from another source. We agree. In our view, the Patent Office has not backed up with acceptable evidence or reasoning its assertion that the scope of enablement is not commensurate with the scope of protection sought. This it must do when rejecting claims as being based on a specification which does not adequately describe how to make or use the invention. In re Marzocchi, 439 F.2d 220, 58 CCPA 1069 (1971).

We believe the rejection could have been proper only if evidence or reasoning had been advanced which would indicate that locating the cooling means at a point other than adjacent the exit point for the strip would not achieve the desired result of lowering the temperature of the spelter at that point. A statement merely doubting this can be done is not enough.

For the foregoing reasons the decision of the board is *reversed* as to claims 17–20 and the appeal is *dismissed* as to claims 12 and 16.

Reversed.