**Application of Frederick C. ARMBRUSTER.**

**Patent Appeal No. 75–514.**

United States Court of Customs and Patent Appeals.

March 27, 1975.

Keith V. Rockey, Chicago, Ill., Albert P. Halluin, attys. of record, for appellant. Frank E. Robbins, CPC International Inc., Englewood, Cliffs, New Jersey, of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

MILLER, Judge.

This appeal is from a decision of the Patent and Trademark Office Board of Appeals, affirming the rejection of claims 45–51 and 53–55 under 35 U.S.C. § 112, first paragraph, in application serial No. 327,335, filed January 29, 1973, for reissue of patent No. 3,560,343, issued February 2, 1971, for "Low D.E. Starch Conversion Products." Claims 1–9 and 32–44 have been allowed, and claim 52 has been indicated allowable if rewritten in independent form. We *reverse.*

## THE INVENTION

Sugars, such as dextrose, may be obtained from starches by breaking up large starch molecules through acid and/or enzymatic hydrolysis. Products of such hydrolysis are known as hydrolysates. The extent of hydrolysis is measured by the parameter D.E.—dextrose equivalent, calculated as dextrose and based on the total dry substance. A low D.E. value means little hydrolysis (breakup) has occurred. Appellant's invention involves a particular process for

producing a low D.E. starch hydrolysate in the range of about 10 to about 25; the contested step under 35 U.S.C. § 112 involves initial acid hydrolysis of the starch "to a D.E. less than about 15."[1] Claim 45 is illustrative (emphasis supplied):

A process for producing a haze-free low D.E. starch hydrolysate which comprises:

1) treating a starch-water slurry with an acid above the gelatinization temperature of the starch to solubilize and hydrolyze the starch *to a D.E. less than about 15,*

2) treating the acid hydrolyzed starch with bacterial alpha-amylase to increase the D.E. by at least about 5 and to obtain a starch hydrolysate product having a D.E. in the range of from about 10 to about 25,

3) stopping the conversion action of the bacterial alpha-amylase, and

4) recovering the hydrolysate so produced.

"Haze-free" refers to the absence of high molecular weight starch fragments which have reassociated to form large, relatively insoluble aggregates adversely affecting optical clarity.

## OPINION

The only issue presented for review is whether appellant's specification satisfies the how to make requirement of 35 U.S.C. § 112, first paragraph, with regard to the claimed limitation that the D.E. after the initial acid hydrolysis is *"less than about 15."* Stated otherwise, is the scope of enablement provided one of ordinary skill in the art by the disclosure commensurate with the scope of protection sought by the claims? In re Geerdes, 491 F.2d 1260 (Cust. & Pat.App. 1974); In re Cescon, 474 F.2d 1331 (Cust. & Pat.App.1973); In re Moore, 439 F.2d 1232, 58 CCPA 1042 (1971). Although appellant's specification describes the invention as broadly as it is claimed, thereby eliminating any issue concerning the description requirement, a specification which "describes" does not necessarily also "enable" one skilled in the art to make or use the claimed invention. See In re Mayhew, 481 F.2d 1373 (Cust. & Pat.App.1973). However, this court has made it clear that the Patent and Trademark Office must substantiate its rejection for lack of enablement with *reasons.* Worth repeating is the following statement from In re Marzocchi, 439 F.2d 220, 58 CCPA 1069 (1971):

The only relevant concern of the Patent Office under these circumstances should be over the *truth* of any such assertion. The first paragraph of § 112 requires nothing more than objective enablement. How such a teaching is set forth, either by the use of illustrative examples or by broad terminology, is of no importance.

As a matter of Patent Office practice, then, a specification disclosure which contains a teaching of the manner and process of making and using the invention in terms which correspond in scope to those used in describing and defining the subject matter sought to be patented *must* be taken as in compliance with the enabling requirement of the first paragraph of § 112 *unless* there is reason to doubt the objective truth of the statements contained therein which must be relied on for enabling support. Assuming that sufficient reason for such doubt does exist, a rejection for failure to teach how to make and/or use will be proper on that basis; such a rejection can be overcome by suitable proofs indicating that the teaching contained in the specification is truly enabling.

. . . it is incumbent upon the Patent Office, whenever a rejection on this basis is made, to explain *why* it doubts the truth or accuracy of any statement in a supporting disclosure and to back up assertions of its own with acceptable evidence or reasoning

---

1. The Patent and Trademark Office concedes enablement of 5 to 15 and only attacks less than 5.

which is inconsistent with the contested statement. Otherwise, there would be no need for the applicant to go to the trouble and expense of supporting his presumptively accurate disclosure. [Emphasis in original and footnote deleted.]

Accord, In re Dinh-Nguyen, 492 F.2d 856 (Cust. & Pat.App.1974); In re Bowen, 492 F.2d 859 (Cust. & Pat.App.1974).

■ Section 112 does not require that a specification *convince* persons skilled in the art that the assertions therein are correct. In re Robins, 429 F.2d 452, 57 CCPA 1321 (1970).

The following precedents are analogous to the present case and demonstrate the error in the position of the board. In re Anderson, 471 F.2d 1237 (Cust. & Pat.App.1973), involved claims to a surgical dressing comprising a laminated dressing of a primary layer, which is readily soluble in plasma, and a secondary layer in face-adhering contact with the primary layer also soluble in plasma, but to a lesser extent. In response to the Patent Office's assertion that the major part of the specification was directed to a laminate in which the primary layer was hemostatic, the court said:

> It is quite true that the *major part* of appellant's specification is a disclosure of a primary layer having hemostatic properties[,] but in determining what is disclosed we cannot restrict our consideration to the *major part* of the disclosure. Appellant is clearly entitled to have the *whole* of his disclosure considered. We have already adverted to the *abstract* and to original claim 1, *both* of which make clear that appellant did not regard his invention as limited to a hemostatic primary layer. His broad disclosures do not refer to the hemostatic property at all. [Emphasis supplied.]

■■ The solicitor requests that we "rethink" *Anderson* with regard to the use of the abstract as part of the specification in dealing with rejections under 35 U.S.C. § 112, citing Rule 72(b), 37 CFR 1.72(b).[2] However, Rule 72(b) states that the purpose of the abstract is to enable the "Patent Office and the public generally to determine quickly from a cursory inspection the *nature and gist of the technical disclosure* [emphasis supplied]." While the rule indicates that the abstract should not be used for *interpreting* the scope of claims, nowhere does the rule state that the abstract is *not* part of the specification. Furthermore, we can see no distinction for purposes of 35 U.S.C. § 112 between the abstract and the claims as originally filed, which have always been considered part of the original disclosure. Accordingly, we adhere to our position in *Anderson*, supra, that the abstract is embraced by the word "specification" for

**2.** The solicitor repeatedly raises what is tantamount to a new ground of rejection with respect to whether appellant's specification enables one skilled in the art to produce a hydrolysate which is "haze-free." "The practice of raising such matters at this stage of the prosecution is unfair to the other party, adds to the burden of the court, and serves to obscure the raising party's position on the issues that actually were raised below." In re Alul, 468 F.2d 939 (Cust. & Pat.App.1972). Similarly, the solicitor attempts to apply a new rationale to support the rejection based upon a patent of record which was not relied on below. This cannot be condoned. In re Corth, 478 F.2d 1248 (Cust. & Pat.App.1973). New grounds of rejection, if valid, may be applied in further proceedings before the Patent and Trademark Office referred to in 35 U.S.C. § 144. Finally, the solicitor refers to certain statements in the prosecution of the original patent, which were only made in connection with the examiner's rejection for impermissible recapture under 35 U.S.C. § 251. Besides considering this to be new argument, we agree with the board, which reversed the examiner's rejection under 35 U.S.C. § 251, that

> the deletion of the broader range from the claims of the patent was made at the insistence of the Patent [O]ffice. The rejections of original claim 24 [having no lower limit] were on grounds of undue multiplicity, 35 U.S.C. § 112, and on obviousness, 35 U.S.C. § 103, over art which apparently had nothing to do with the insertion of the lower limit of 5. There is nothing inconsistent in this prosecution with the appellant's position that there was error without deceptive intention.

the purposes of a rejection under 35 U.S.C. § 112, first paragraph.

In re Coleman, 472 F.2d 1062 (Cust. & Pat.App.1973) involved a flexible conduit comprising a suitable elastic adhesive material between the metal hose and a plastic jacket. The sole issue was enablement with respect to the nature of the adhesive material, described in the claims by certain properties. The specification provided a generic disclosure couched in terms of the properties recited in the claims and a more specific disclosure of the preferred adhesive materials described by reference to trademark and trade name designations. In reversing the Patent Office the court stated:

> In reviewing the rejection before us, we have appropriately looked to the disclosure in its *entirety* and have arrived at a conclusion which is necessarily to some extent subjective. . . .
> we find ourselves confronted with no adequate justification for denying appellant patent protection of the scope sought.

> The board's opinion focuses too narrowly on the listing of specific materials by trademark or trade name. We stress the need to inject the *totality* of the disclosure into the examination for sufficiency under § 112 of this specification. [Emphasis supplied.]

In re Mayhew, supra, involved an apparatus for continuous-strip molten metal coating operations wherein a preheated continuous strip of metal is passed through a bath of molten metal. The claims recited a cooling means within the bath, and the Patent Office rejected the claims for lack of enablement in not specifying that the cooling means had to be adjacent the exit side of the bath. The specification broadly indicated that a cooling means was located in the bath; the specification did not state specifically that the cooling means could be located *anywhere*, and no specific embodiments described the location of the cooling

means other than adjacent the exit side of the bath. In reversing the Patent Office, the court found that there was nothing in the specification to indicate that the cooling *had to be* adjacent the exit side of the bath; that the description in the specification of the cooling means at the exit side of the bath was merely a preferred embodiment; and that the Patent Office failed to substantiate its rejection with evidence or reasoning that location of the cooling means at a point other than the exit side of the bath would not achieve the desired result.

The examiner in this case expressed *doubt* concerning the operability of the claimed process having an initial acid hydrolysis step to a D.E. less than *5*. The justification for this doubt was his assertion that *appellant's specification* teaches that a D.E. of at least 5 is essential to operability.

The abstract of the specification indicates that the starch in the acid hydrolysis step "is treated with acid to a D.E. less than 15," which would merely inform one skilled in the art that anything less than 15 would be operable. In re Anderson, supra; In re Mayhew, supra. In example I, starch slurries were acid hydrolyzed to a "maximum of 15 D.E." Although the particular slurries had a D.E. of 10.3, 12.9, and 15.2, there is no indication that values less than 5 would not be operable. Also, examples II, III, and IV show "a D.E. of about 6.5," "of about 8," and "of 5," respectively.

After the abstract, the specification twice states that the hydrolysate after the initial hydrolysis has "a D.E. between *about* 5 and *about* 15 [emphasis supplied]." There is no implication that a D.E. of at least 5 is essential to operability of the invention. Immediately following is a discussion of the "preferred method," wherein the starch is acid hydrolyzed to "a D.E. between 5 and 15."[3] Again, there is no implication of essen-

---

3. In response to a question at oral hearing whether that statement involved *the* preferred method, the solicitor asked what was the *other* preferred method. Assuming there is another preferred method rather than a mere variation of *the* preferred method, the word "preferred" speaks for itself.

tiality in a D.E. of at least 5. In the continuing discussion of the preferred method, the specification states that the acid hydrolysis "is continued to a D.E. of at least 5 and less than 16 [sic ? 15]." The term "at least" is heavily relied upon by the examiner and the board; however, it occurs within the overall context of "preferred method" and does not, therefore, imply that operability is inexorably tied to a value of 5 or more.

■ We conclude that there is nothing in the specification which justifies the doubts of the examiner or the board over the sufficiency of the specification to enable one skilled in the art to make a low D.E. hydrolysate starting from a starch slurry hydrolyzed to a D.E. less than 5.

Appellant's evidence includes his affidavit reciting certain experiments and comparative results involving D.E. values of above and below 5. Such an affidavit can be considered in demonstrating objective enablement as part of the "suitable proofs" discussed in In re Mar-

zocchi, supra. The solicitor attacks the use of this affidavit as an *ex post facto* consideration, citing In re Kirk, 376 F.2d 936, 54 CCPA 1119 (1967) and In re Gardner, 427 F.2d 786, 57 CCPA 1207 (1970). However, those cases involved attempts to *add* information to the specification; here, the affidavit is being employed only to demonstrate that the teaching in the specification is truly enabling. The affidavit shows very good results at a D.E. of 1.4, with equivalent results at D.E.'s of 3.2, 3.5, 4.9, and 6.7. It plainly demonstrates that the lower limit of 5 is not critical and that initial acid hydrolysis to a D.E. below 5 is operable according to the teachings of the specification.

In view of the foregoing, we hold that appellant's specification satisfies the how to make requirement of 35 U.S.C. § 112, first paragraph.

Accordingly, the decision of the board is reversed.

Reversed.