**Application of Nguyen DINH–NGUYEN and Einar August Stenhagen.**

**Patent Appeal No. 9134.**

United States Court of Customs and Patent Appeals.

Feb. 28, 1974.

Anthony M. Lorusso, Kenway, Jenney & Hildreth, Boston, Mass., attorney of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Henry W. Tarring, II, Falls Church, Va., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

This appeal is from the decision of the Board of Appeals, affirming the rejection under 35 U.S.C. § 112 of claims 2, 3 and 11 to 16 of appellants' application, serial No. 768,950 filed September 16, 1968, for "Method of Deuterating Organic Compounds." [1] We reverse.

### The Invention

The application is directed to the improvement of the process of exchanging the heavy isotope deuterium for hydrogen in organic compounds by the use of deuterium peroxide as a promoter. It is stated in the specification that the presence of this promoter permits the replacement of hydrogen in a "great many organic compounds including compounds of high molecular weight" whereas the earlier methods were only effective with compounds of low molecular weight.

All of the claims are in Jepson form, claim 11 reciting the claimed process in its broadest scope:

11. In the method of deuterating an organic compound containing hy-

---

1. An apparent continuation of serial No. 522,030, filed January 21, 1966.

drogen atoms replaceable by deuterium wherein said compound is reacted with heavy water as a deuterium source in the presence of alkali metal deuteroxide and a deuterium reduced Adams catalyst ($PtO_2H_2O$) the improvement which consists in carrying out the deuterating reaction in the present [sic] of deuterium peroxide.

Claim 12 restricts the alkali metal deuteroxide to the sodium species, with further dependent claims 2 and 3 defining specific methods for producing the catalyst, promoter and deuteroxide. Remaining dependent claims 13–16 limit the "deuteratable organic compound" of claim 11 to "a hydrocarbon," "an alcohol," "a keton [sic]," or "a fatty acid," respectively.

## The Rejection

The examiner's rejection under 35 U.S.C. § 112 was based on the conclusion that the specification failed to "effectively support the scope" of the claims. It was his position that the claims encompassed the use of a broad range of organic compounds in the deuteration process, many of which might "properly be expected to undergo interfering reactions." The known reactivity of hydrogen peroxide with many organic compounds was cited as support for the holding of inadequate disclosure of suitable operating conditions when similar oxidation reactions might be expected due to the presence of its counterpart deuterium peroxide.

The board agreed with the examiner, stating:

    None of the appealed claims precludes as a starting material compounds containing groups reactive with deuterium peroxide. The specific examples are devoid of representatives thereof, and the specification, therefore, does not demonstrate how the claimed process would produce an improvement where the stated reactants containing reactive groups are employed. We might particularly note that olefinic, and particularly diolefinic, compounds, which may be

hydrocarbons, alcohols, ketones or fatty acids as indicated in the dependent claims, react vigorously with hydrogen peroxide to either split, epoxidize or produce other products, dependent upon reaction conditions. Similar interfering reaction with deuterium peroxide is to be expected and the resulting process is not the argued improvement of an old process since the same product is not obtained as is provided where the oxidizing agent is absent and there is no evidence that the process itself is in any way improved.

The board also concluded that the deuterium peroxide in sufficient quantity might be expected to oxidize the Adams catalyst and thus preclude "the desired results."

Appellants maintain that their invention lies in the specific improvement of an old process by the incorporation of the promoter deuterium peroxide. Jepson claims have been used to pinpoint this improvement, the preamble simply setting forth the known deuteration process. Furthermore, it is argued that all the requirements of 35 U.S.C. § 112 have been complied with insofar as the deuteration is concerned, which is all that is necessary. Disclosure of means for dealing with possible interfering reactions is said not to fall within the required teaching of how to make and use the claimed invention.

The solicitor, on the other hand, contends the board properly held that the enabling disclosure is "not commensurate in scope with the claim terminology" in that the possibility of undesirable side reactions with certain compounds has not been dealt with. The reasons given by the examiner and board, in addition to the apparent concession by appellants that side reactions might occur, are alleged to establish "at least a strong probability that the invention as broadly claimed encompasses significant areas wherein the process would be inoperative, or at the least, inadequately disclosed."

## OPINION

Although the rejection has not been stated in terms of any particular requirement of 35 U.S.C. § 112, we consider the issue to be restricted to the enabling disclosure requirement of the first paragraph. No real challenge has been made to the claims as not setting forth that which appellants regard as their invention, only the adequacy of support therefor.

Accordingly, the touchstone is that which is claimed. Deuteration by the general method recited in the preamble of appellants' claims is a known process. Although, as acknowledged in appellants' specification, the applicability of that process was limited to certain classes of organic compounds, the basic procedure was a part of the prior art. Appellants' contribution lies in extending the effectiveness of the process by the addition of a particular promoter. The process may still be characterized as "deuterating an organic compound containing hydrogen atoms replaceable by deuteration," even though the scope of deuterable compounds has been widened. Thus the accompanying disclosure in the specification need only be sufficient to enable those skilled in the art to achieve deuteration of potentially deuterable compounds in the presence of deuterium peroxide.

■ Looking to appellants' specification, we find not only a general discussion of the procedure to be followed but also three specific examples outlining the preparation of the Adams catalyst, the alkali catalyst, and the promoter as well as the exchange reaction with stearic acid, camphor, and anthracene. All the "deuteratable" compounds are of high molecular weight and all are deuterated by appellants' improved process. The obvious general applicability of the procedure so demonstrated fully satisfies the enabling disclosure requirement of 35 U.S.C. § 112.

■ Any assertion by the Patent Office that the enabling disclosure is not commensurate in scope with the protection sought must be supported by evidence or reasoning substantiating the doubts so expressed. In re Bowen, Cust. & Pat.App., 492 F.2d 859, decided concurrently herewith; In re Gardner, 475 F.2d 1389, (CCPA 1973); In re Marzocchi, 439 F.2d 220, 58 CCPA 1069 (1971). Here the challenges enumerate possible interfering reactions but, as pointed out by appellants, there has been no challenge whatever to appellants' repeated assertions that the starting materials containing the so-called "reactive groups" *are* deuterated. The hypothesized oxidation or even destruction of the original compounds per se, by splitting or other mechanism, cannot be considered an indication of the inoperability of the replacement reaction. The only valid assumption is that the form of the final deuterated product might differ from that of the starting material. Such a change is not inconsistent with claim language, which merely calls for "deuterating an organic compound * * *" and creates no requirement that said compound remain otherwise unaffected during the course of the reaction. The "improvement" relates to the expanded effectiveness of the *deuteration* process, regardless of the possible birth or increase of side reactions due to the presence of the promoter. The enabling disclosure need only be of commensurate scope.

■ Although the board also hypothesized that the peroxide might oxidize the Adams catalyst necessary for the deuteration into inactivity, we agree with appellants that it is implicit in the claims that the conditions of the process have not been met unless the catalyst is present and active as a catalyst. Requiring a recitation in the claims of the specific deuterium peroxide proportions employed in the examples to insure that activity would be an unnecessary limitation. Disclosure in the *specification* sufficient to enable practice of the invention by one skilled in the art, taking into consideration obvious modifications of the reactant ratios of specific examples, is all that is required. It is

not a function of the *claims* to specifically exclude either possible inoperative substances or ineffective reactant proportions. In re Anderson, 471 F.2d 1237 (CCPA 1973).

The decision of the board is reversed.

Reversed.

